## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VARIANT HOLDING COMPANY, LLC,[1] | ) | Case No. 14-12021 (BLS) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| VARIANT HOLDING COMPANY, LLC, | ) | Adv. Proc. No. 15-50931 (BLS) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COURTLAND GETTEL, individually and as trustee | ) | |
| for WALKER'S DREAM TRUST, GETTEL | ) | |
| CHILDREN'S TRUST, GETTEL CHILDREN'S | ) | |
| TRUST 2, and GETTEL CHILDREN'S TRUST 3; | ) | |
| PETER CASH DOYE; JEFFREY H. | ) | |
| GREENBERG; MICHAEL BERNSTEIN; | ) | |
| THOMAS O. WAGNER, II; KATHRYN | ) | |
| NIGHSWANDER (formerly, Kathryn Gettel); | ) | |
| CONIX, INC.; JH GREENBERG & ASSOCIATES, | ) | |
| PLLC; HELENA, LLC; SUI GENERIS, LLC; | ) | |
| PREMIER HOME DEVELOPMENT GROUP LLC; | ) | |
| FORWARD PROGRESS ENTERPRISES, LLC; | ) | |
| VARIANT MANAGEMENT COMPANY, LLC; | ) | |
| CONIX WH HOLDINGS, LLC; NUMERIC | ) | |
| HOLDING COMPANY LLC; VARIANT | ) | |
| ROYALTY GROUP, LP; and TOMMY BOY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

---

[1] The last four digits of the Debtor's federal tax identification number are (4044).  The Debtor's service address is: Variant Holding Company, LLC, c/o Development Specialists, Inc., 333 S. Grand Ave, Suite 4070, Los Angeles, CA 90071-1544.

# **TABLE OF CONTENTS**

Preliminary Statement.................................................................................................... 1

Statement of Facts ........................................................................................................ 4

   A.   The Bankruptcy Proceedings........................................................................... 4

   B.   The Beach Point Settlement Agreement......................................................... 5

   C.   Yardi Contract ............................................................................................... 8

   D.   Defendants' Interference with the Yardi Accounting Data .............................. 9

Argument ................................................................................................................... 13

   A.   Defendants' Interference with Access to the Yardi Accounting Data Should Be Enjoined
Under 11 U.S.C. § 105(a), Fed. R. Bankr. P. 7001(7), and Fed. R. Bankr. P. 7065 ......... 13

      (i)   The Debtor Has A Reasonable Probability of Success on the Merits and Will Be
Irreparably Injured By Denial of a Temporary Restraining Order ........................... 16

      (ii)  A Preliminary Injunction Will Not Harm Defendants................................. 18

      (iii) Granting the Preliminary Injunction is in the Public Interest .................................... 19

   B.   No Bond or Other Security Should Be Required in this Case ........................... 20

Conclusion ................................................................................................................. 20

DOCS_DE:203567.3 89703/002

# TABLE OF AUTHORITIES

**Cases**

*Allegheny Energy, Inc. v. DQE, Inc*., 171 F.3d 153 (3d Cir. 1999)............................................. 13

*In re Integrated Health Services, Inc*., 281 B.R. 231 (Bankr. D. Del. 2002) ............................. 16

*In re American Film Tech., Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994)……………………...20, 24

*Keller v. Blinder (In re Blinder, Robinson & Co., Inc.)*,
140 B.R. 790, 794 (Bankr. D. Colo. 1992)………………………………………………………18

**Statutes**

11 U.S.C. § 105(a) ............................................................................................................... passim

11 U.S.C. § 362……………………………………………………………………………..18

**Rules**

Bankruptcy Rule 7065 ...................................................................................................... 6, 12, 16

Fed. R. Bankr. P. 7001 ..................................................................................................................... 6

Plaintiff Variant Holding Company, LLC ("Plaintiff" or the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 case, respectfully submits this memorandum of law (the "Memo of Law") in support of *Plaintiff's Motion for Temporary Restraining Order* (the "Motion"), filed concurrently herewith.

### Preliminary Statement

1.    The Debtor seeks injunctive relief against those Defendants, including Courtland Gettel, Jeffrey H. Greenberg, and their affiliates, who recently have been interfering with the Debtor's ability to access certain critical accounting data for its subsidiaries (the "Subsidiaries")[2] through accounting software maintained by a third party provider, Yardi Systems, Inc. ("Yardi").

2.    The existing contract with Yardi (the "Yardi Contract") for accounting software (the "Yardi Software") is in the name of Conix Enterprises, Inc. ("CEI"), an entity controlled directly or indirectly by Defendant Gettel.  Notwithstanding the happenstance that CEI is the contract party under the Yardi Contract, the Debtor and its Subsidiaries (including the property manager, CF Lane, LLC ("CF Lane")) have been using the Yardi Software since 2013 to assist in the management of their real estate assets and have been paying Yardi for such service (totaling over $293,000 since October 2014).  Upon information and belief, CEI is a party to the Yardi Contract in name only and has not been utilizing the Yardi Software or paying for any services thereunder.

---

[2] The list of Subsidiaries is set forth in a chart within the proposed order filed with the Motion.

3.      Within the past week, Defendants have conspired, in the name of CEI, to convince Yardi to terminate the Debtor's access to the Yardi Software, which termination in fact occurred on December 2, 2015.  As a result of such termination, the Debtor and its Subsidiaries cannot access critical property-level information, book new tenants, or pay bills.

4.      The Debtor has repeatedly tried to convince Yardi to enter into a new contract with the Debtor so that the Debtor and its Subsidiaries can obtain access to the Yardi Software and the accounting data belonging to the Debtor thereon, but certain of the Defendants, either directly or indirectly through other persons, have instructed Yardi not to take any direction or instruction from the Debtor.  At the same time, these same Defendants have offered to sell access to the Yardi Software and the Debtor's data thereon to the Debtors – *this is pure extortion*.

5.      Unfortunately, Yardi has advised that it can only take direction from the party to its contract, which is CEI.  As of December 2, 2015, the Debtor's access to the Yardi Software was terminated.  As a result, the Debtor and its Subsidiaries are unable to access critical accounting data that belongs to this estate.

6.      As set forth in the Sharp Declaration (defined below), the operation of the Properties is severely and immediately compromised. In particular, as a result of not having access to the Yardi Software, the following tasks, which are critical to the daily operation of the Properties, have been interrupted:

   a.      Unit activity, including tenant move ins, move outs and lease renewals, cannot be processed.

   b.      Incoming funds (e.g., rent, fees, and deposits) cannot be posted, resulting in inaccurate financial data.  If the process is done manually it leaves room for errors and the possibility of theft.

-2-

      c.     Onsite management lacks access to any unit availability, which causes an interruption to leasing activity and positive occupancy growth.

      d.     Payments of invoices cannot be completed, resulting in potential interruption to services crucial to operation of the Properties.

      e.     Lease screening cannot be completed.

      f.     Owner reporting cannot be completed.

      g.     The Subsidiaries cannot apply utility billing.

      h.     There is no access to the resident database, which is extremely important for the safety of the residents and during emergency situations such as a fire.

      i.     The Subsidiaries cannot prepare a final account statement to be generated at move out including security deposits applied, which is required under applicable state law.

      j.     Service requests have to be done manually. Yardi provides information on permission to enter the units, who can enter without prior notification, categorizing work orders.

*See* Sharp Declaration ¶ 19.

      7.     The Motion is intended to enforce the automatic stay and this Court's Order Pursuant to Sections 105(a) and 363(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreement with the Beach Point Funds [Docket No. 152] (the "Beach Point Settlement Order"), entered on November 3, 2014. Specifically, by the Motion, the Debtor seeks an order:

- preliminary enjoining those Defendants, including Gettel, Greenberg, and any person or entity (such as CEI) acting on their behalf, who are either directly or indirectly interfering with the Debtor's ability to access the Yardi Software and the accounting data thereon belonging to the Debtor and its Subsidiaries, or interfering with the ability of the Debtor, on behalf of itself or any of its Subsidiaries, to enter into a new contract with Yardi for the provision of the Yardi Software;

- providing that the Debtor and its Subsidiaries are permitted to enter into a new contract with Yardi for the provision of the Yardi Software;

- that gives the Debtor, on behalf of itself and its Subsidiaries, immediate access to the Yardi Software and the accounting data thereon belonging to the Debtor and its Subsidiaries; and

- that requires that neither the Debtor nor any of its Subsidiaries be required to purchase, tender any amounts, negotiate a sale, or make arrangements with the Defendants to obtain access through the Yardi Software of any accounting data (current or historical) of the Debtor or any of its Subsidiaries or for use of any customization features through the Yardi Software.

8.      For the reasons set forth herein, the Motion should be granted immediately.

9.      In further support of the Motion, the Debtor has concurrently filed the *Declaration of Alan J. Kornfeld in Support of Plaintiff's Motion for Temporary Restraining Order* (the "Kornfeld Declaration") and the *Declaration of Bradley D. Sharp in Support of Plaintiff's Motion for Temporary Restraining Order* (the "Sharp Declaration"), both of which are attached to this Memo of Law.

### Statement of Facts

**A.      The Bankruptcy Proceedings**

10.      On August 28, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

11.      The Debtor continues in the possession of its properties, and is operating and managing its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Debtor's case.

12.      The Debtor and its direct and indirect subsidiaries are a commercial real estate company with direct and indirect ownership interests in approximately 25 real property

-4-

interests in various states, including two properties owned by non-debtor subsidiaries (the "Properties").  Variant is the ultimate parent within the organization.

**B.**      **The Beach Point Settlement Agreement**

13.      Soon after the Petition Date, Beach Point filed the *Motion of the Beach Point Funds for an Order Directing the Appointment of a Chapter 11 Trustee* [Docket No. 20] (the "Trustee Motion").  Beach Point also objected to the *Motion of Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and Restructuring-Related Services, Nunc Pro Tunc As of the Petition Date, as Supplemented* [Docket Nos. 4, 63] (the "CRO Application").  Both the Trustee Motion and the CRO Application were resolved through a global settlement.

14.      On October 20, 2014, the Debtor filed the *Motion of the Debtor Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order Approving Settlement Agreement with the Beach Point Funds* (the "Beach Point Settlement Motion") [Docket No. 107], seeking approval of that certain Settlement Agreement dated as of October 17, 2014 (the "Beach Point Settlement Agreement," a copy of which is attached to the Beach Point Settlement Order as Exhibit 1), by and between the Debtor, its subsidiaries listed on Exhibit A to the Beach Point Settlement Agreement, and those individuals and entities (including certain of the Defendants) listed on Exhibit B to the Beach Point Settlement Agreement (the "Settling Non-Debtor Party Defendants"), on the one hand, and Beach Point, and those individuals and entities listed on Exhibit C to the Beach Point Settlement, on the other hand.

-5-

15.     Defendants Gettel, Kathryn Nighswander (formerly, Kathryn Gettel), Conix, Inc., Walker's Dream Trust, Gettel Children's Trust, Gettel Children's Trust 2, Gettel Children's Trust 3, Conix Commercial Investments, LLC, Conpartments LLC, Numeric Commercial Investments, LLC, and Conix Commercial, LLC, and the Settling Non-Debtor Party Defendants, which consist of Peter Cash Doye, Michael Bernstein, Helena, LLC, Thomas O. Wagner, II, Premier Home Development Group, LLC, Sui Generis WS, LLC, Jeffrey H. Greenberg, and JH Greenberg & Associates, PLLC, are also parties to the Beach Point Settlement Agreement, and along with the Debtor are referred to collectively therein as the "Defendant Parties."

16.     The Beach Point Settlement Agreement contains various provisions restricting distributions to the Defendant Parties or their "Affiliates,"[3] which necessarily include the equity holders that have challenged the Debtor's supplemental sale of the "Texas/East Coast Portfolio" and are appealing the Court's approval of that sale (the "Equity Holders").[4]

17.     The Beach Point Settlement Agreement is crystal clear that the Defendants, including the Equity Holders, would have no say over the decision-making or management of the Debtor and the Subsidiaries:

> For the avoidance of doubt, Variant's CRO, subject to the oversight of the Board of Managers (as modified pursuant to Section 2(b) below), *shall have full control and decision-making authority, subject to the terms of this Agreement, with respect to the operations, management and governance of the Debtor and the Subsidiaries*, including but not limited to any decisions related to the sale of the Properties and any use of cash, whether generated from the operation or sale of

---

[3] "Affiliate" is defined in the Beach Point Settlement Agreement to mean: "as to any Person, or any other Person (other than an individual) directly or indirectly Controlling, Controlled by, or under direct or indirect common Control with such Person." Beach Point Settlement Agreement at § 12(a)(i).
[4] The Equity Holders consist of Conix, Inc., Conix WH Holdings, LLC, Numeric Holdings Company, LLC, Walker's Dream Trust, and Variant Royalty Group, LLC.

the Properties, or from any draw down on funding under the DIP Loan (as defined below) or any other source. *The Defendant Parties shall have no decision-making authority in connection with the operations, management and governance of the Debtor and the Subsidiaries*, and shall not be consulted unless necessary to preserve the value of the Properties or to otherwise obtain relevant background information. Further, for the avoidance of doubt, the Defendant Parties shall have no control or decision-making authority at any time over the use or distribution of proceeds from the sale of the Properties until all amounts owing to the Beach Point Funds pursuant to the terms of this Agreement are indefeasibly paid and satisfied in full, and the CRO shall be responsible for ensuring that no such proceeds are used or distributed in any way inconsistent with the terms of this Agreement.

Beach Point Settlement Agreement at § 2(a) (emphasis added).

18.    Further, in connection with the Beach Point Settlement Agreement, the parties also agreed to "refrain from executing any instruments or taking any actions that would interfere with the effectuation of the agreements and understandings of the Parties."  Beach Point Settlement Agreement at § 12(d).

19.    On November 3, 2014, the Court entered the Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreement with the Beach Point Funds [Docket No. 152] (the "<u>Beach Point Settlement Order</u>") approving the Beach Point Settlement Agreement.  This Court reserved jurisdiction under the Beach Point Settlement Order "to hear and determine all matters arising from or related to the implementation, enforcement, or interpretation of this Order."  *See* Beach Point Settlement Order at ¶ 9.  The Beach Point Settlement Agreement itself contains a jurisdiction provision pursuant to which each party "irrevocably and unconditionally" agreed that "any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement or the breach, termination, enforcement, interpretation or validity thereof, may and shall be brought solely and exclusively before the Bankruptcy Court . . . ."  *See* Beach Point

-7-

Settlement Agreement at § 12(g).  The parties to the Beach Point Settlement Agreement also

agreed that legal remedies for breach of the agreement would be inadequate and therefore

agreed, in addition to any remedies at law, that parties shall be entitled to seek "equitable relief

in the form of specific performance, a temporary restraining order, a temporary or permanent

injunction, or any other equitable remedy which may be available."  *Id.* at § 12(h).

**C.**    **Yardi Contract**

20.    CEI is a party to a contract with Yardi titled "SASS Subscription

Agreement," dated May 22, 2013 (the "Yardi Contract").    On October 9, 2014, Defendant

Gettel signed, as CEO of Variant, but on behalf of CEI, an addendum (the "Addendum") to the

Yardi Contract.  True and correct copies of the Yardi Contract and Addendum are attached to the

Sharp Declaration as Exhibit 1.  The applicable account number with Yardi is identified as client

pin #100055759.  Attached to the Sharp Declaration as Exhibit 2 is evidence of the November

and December 2015 payments made to Yardi by the Subsidiaries.

21.    The applicable fees due under the Yardi Contract have been paid since

2013.  Each of the Debtor's property-level Subsidiaries pays its own portion of the applicable

fees.  Postpetition since October 1, 2014, the Subsidiaries have paid, in the aggregate,

approximately $293,805.66.  That total includes $235,044.54 paid from October 1, 2014 through

September 30, 2015 and three monthly payments of $19,587.04 made to date for October

through December 2015.

D.    **Defendants' Interference with the Yardi Accounting Data**

22.    Notwithstanding the automatic stay and the terms of the Beach Point Settlement Agreement and the Beach Point Settlement Order and in flagrant disregard of this Court's order, certain Defendants, including Gettel, Greenberg, and their affiliates, either directly or indirectly, are continuing to interfere with the Debtor's administration of its estate and the operations and management of the Debtor and its Subsidiaries by terminating access to the Yardi Software and preventing the Debtor from obtaining accounting data absent payment to CEI.

23.    Yardi maintains the Yardi Software and the accounting data used by the property-level Subsidiaries (and the property manager, CF Lane, LLC ("CF Lane") to conduct daily business in the ordinary course and to assist with critical functions that maintain the Subsidiary properties.  The Yardi Contract happens to be executed in the name of CEI, which is controlled by Conix WH Holding, LLC, one of the Debtor's equity holders, which in turn is controlled by Defendant Gettel.   Despite the contract being in the name of CEI, there is no accounting data or any benefit provided by Yardi to CEI, and CEI has not been paying for services under the Yardi Contract.  All of the value of the Debtor's estate resides by virtue of its ultimate ownership of the property-level Subsidiaries.  As of December 2, 2015, the Debtor's access to the Yardi Software was terminated.

24.    Pursuant to the Beach Point Settlement Agreement and Beach Point Settlement Order, Defendants previously contractually agreed to remove themselves from all management authority as to the Debtor and its Subsidiaries and agreed to refrain from taking any actions that would interfere with the provisions of the Beach Point Settlement Agreement.  But the Defendants, including Gettel, and any person or entity (such as CEI) acting on their behalf,

-9-

are continuing to interfere with the Debtor's administration of the estate.   In their latest efforts,

Defendants have done the following, among other actions:

- Defendant Greenberg has, directly or indirectly, demanded that Yardi not take any instruction from the Debtor's Chief Restructuring Officer ("CRO"), Bradley D. Sharp;

- Certain of the Defendants, through CEI's counsel, Joseph A. Sammartino, have told Yardi that CEI "owns the data that is used in the Yardi database";

- Communicated with Yardi that if the Debtor wants to have access to CEI's data, it is free to negotiate a purchase of the contract or the data with CEI; and

- Demanded that CF Lane employees immediately stop using the accounting data and demanded that CF Lane employees immediately erase, delete, destroy, and eliminate any copies of such data from CF Lane systems and servers.

25.     The Debtor has tried to convince Yardi to enter into a new contract with

the Debtor so that the Debtor and its Subsidiaries can obtain access to the Yardi Software and the

accounting data that belongs to the Debtor.   The Debtor understands that CEI has no objection to

the Debtor entering into a new contract with Yardi.  However, CEI has taken the position that all

of the accounting data through the Yardi Software is owned by CEI, and not the Debtor or its

Subsidiaries, despite CEI not paying for the services.  CEI has also demanded that if the Debtor

wants to continue using any of CEI's customization of the Yardi software or to have access to

any accounting data in the system, the Debtor must negotiate a sale or other arrangement to

purchase or buy the customization and data.  This demand is nothing more than a ransom.  The

Debtor and its Subsidiaries must have access to any accounting data (current or historical) of the

Debtor or any of its Subsidiaries through the Yardi Software.  That accounting data is property of

the Debtor's estate.  Finally, CEI has made demand that CF Lane employees immediately stop

using the accounting data and that CF Lane employees immediately erase, delete, destroy, and

eliminate any copies of such data from CF Lane systems and servers, in direct violation of the

automatic stay.  (CF Lane has advised the Debtor that it will not take action in response to CEI's

demand to destroy data absent a court order.)

26.    On September 21, 2015, Mr. Sharp sent a letter to Yardi, a copy of which

is attached to the Sharp Declaration as Exhibit 3, requesting that Yardi change the account name

from Conix Enterprises, Inc. to Variant Holding Company, LLC and update the billing address.

27.    On September 29, 2015, Defendant Greenberg sent an email, a copy of

which is attached to the Sharp Declaration as Exhibit 4, to Jeff Bischoff at Yardi indicating that

he represents CEI, that CEI did not authorize the name change, and demanding that Yardi

immediately reverse any name change.

28.    Between October 13, 2015, and October 28, 2015, the Debtor, through

Allan Youngberg, the Debtor's CFO, Development Specialists Inc., the Debtor's financial

advisor, and CF Lane, LLC, communicated with Yardi regarding continued use of the Yardi

Software.  The emails indicated that as long as payments were being made, access to Yardi

would continue to provide access.  On November 23, 2015, Yardi notified CF Lane, LLC that all

support to CF Lane is suspended, "per Conix Enterprises, Inc. request."  Copies of the emails are

attached to the Sharp Declaration as Exhibit 5.

29.    The Debtor then made attempts to negotiate with Yardi without success.

30.    On November 23, 2015, Mr. Sharp sent an email to Yardi, a copy of which

is attached to the Sharp Declaration as Exhibit 6, requesting to open a new account for the

Debtor and its Subsidiaries.  Yardi responded that the contract may not cover the same properties, absent a court order.

31.     On November 30, 2015, counsel to the Debtor sent an email to Yardi, a copy of which is attached to the Kornfeld Declaration as Exhibit 1, notifying Yardi that Mr. Sharp is the CRO of Variant and has full authority to make decisions with respect to Variant and its Subsidiaries.  The email also requested that Yardi entered into a new agreement with the Subsidiaries to provide accounting services and that Yardi not take any action to terminate existing services for Variant or its Subsidiaries or take any action that would impact or affect services provided by Yardi to Variant and its Subsidiaries.

32.     On November 30, 2015, counsel to the Debtor received an email forwarded from Arnold Brier of Yardi, a copy of which is attached to Kornfeld Declaration as Exhibit 2, which email is from counsel to CEI, Joseph Sammartino, to Arnold Brier of Yardi (and copying email addresses used by Defendants Doye and Bernstein).  The email accuses counsel to the Debtor of "rhetorical sleight of hand to create confusion" among other things.  The email states, among other things, that CEI "owns the data that is used in the Yardi database" and that if Variant desires to take over the Yardi Contract "and/or have access to Conix Enterprises' data, Variant Holding Company is free to reach out to Conix Enterprises to negotiate a purchase of the contract and/or the data."

33.     On December 1, 2015, counsel to the Debtor sent an email, a copy of which is attached to Kornfeld Declaration as Exhibit 3, to Defendant Greenberg, Mr. Sammartino, and counsel for Defendant Gettel and the Equity Holders (Michael McGrath, Fred

-12-

Petersen, and Merri Baldwin).  The email demands that the Defendants immediately cease and desist from attempting to close any Yardi account that impacts Variant or its Subsidiaries.

34.     On December 2, 2015, access to the Yardi Software was terminated.  The Debtor and its Subsidiaries cannot access certain critical accounting data needed to operate the Properties in the ordinary course.

35.     On December 2, 2015, Mr. Sammartino, on behalf of CEI, sent an email, a copy of which is attached to the Sharp Declaration as Exhibit 7, to CF Lane demanding that CF Lane immediately stop using the accounting data and that any copies of such data in CF Lane's possession should "be immediately erased, deleted, destroyed and eliminated from all CF Lane systems and servers."  (CF Lane has advised the Debtor that it will not take action in response to CEI's demand to destroy data absent a court order.)

36.     The foregoing actions:  (a) directly contravene the Beach Point Settlement Agreement and the Beach Point Settlement Order, (b) constitute contempt of court, (c) have the effect of interfering with the Debtor's administration of its estate; and (d) violate the automatic stay.

### Argument

**A.     Defendants' Interference with Access to the Yardi Accounting Data Should Be Enjoined Under 11 U.S.C. § 105(a), Fed. R. Bankr. P. 7001(7), and Fed. R. Bankr. P. 7065**

37.     Bankruptcy Rule 7065 provides for the issuance of temporary restraining orders and preliminary injunctions in adversary proceedings.  *See also* Fed. R. Bankr. P. 7001(7).

-13-

38. As to the issuance of a temporary restraining order, Bankruptcy Rule 7065 provides that the court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Bankr. P. 7065 (citing Fed. R. Civ. P. 65(b)). Such an order may be granted "upon a summary showing of its necessity in order to prevent immediate and irreparable injury, pending a fuller hearing . . . upon a motion for a preliminary injunction." 7 *Moore's Federal Practice*, ¶ 65.05, at 65-100 (2d ed. 1990).

39. In the Third Circuit, courts consider the following factors to determine if injunctive relief should issue under section 105(a) of the Bankruptcy Code:

> (1) whether the movant has shown a reasonable probability of success on the merits;
>
> (2) whether the movant will be irreparably injured by denial of the relief;
>
> (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and
>
> (4) whether granting the preliminary relief will be in the public interest.

*Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999) (citations omitted); *see also In re American Film Tech., Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994). Application of each of these factors in this case demonstrates that an injunction barring Defendants, including Gettel and any person or entity (such as CEI) acting on their behalf, either directly or indirectly, from

-14-

continuing to interfere with the Debtor's ability to access accounting data through the Yardi

Software for the Debtor and its Subsidiaries, is appropriate under section 105(a) of the

Bankruptcy Code, Fed. R. Bankr. P. 7001(7), and Fed. R. Bankr. P. 7065.

40.    The Debtor seeks this injunctive relief under 11 U.S.C. § 105(a), Fed. R.

Bankr. P. 7001(7), and Fed. R. Bankr. P. 7065 because the Debtor has already suffered, and will

continue to suffer, irreparable harm if the Defendants' are allowed to: (a) continue interfering

with the Debtor's ability to access all accounting data maintained through the Yardi Software for

the Debtor and its Subsidiaries; (b) require the purchase, payment, or tendering of any funds to

obtain access to the Yardi Software of any accounting data (current or historical) of the Debtor or

any of its Subsidiaries or for use of any customization features in the Yardi Software; and (c)

make attempts to have such accounting data erased, deleted or destroyed.

41.    Indeed, without the ability to use existing accounting data for the

Subsidiaries and to enter into a new contract with Yardi, the Debtor's ability to administer its

estate is at a standstill.  The Debtor's Subsidiaries cannot access property-level information,

book new tenants, or pay bills.  The Defendants must be enjoined.  The Debtor needs emergency

relief immediately or it will suffer devastating, irreparable harm.

42.    Preliminary injunctive relief is proper here because there is a likelihood of

success on the merits of the Debtor's claims that, Defendants, in the name of CEI:  (a) are

willfully violating the terms of the Beach Point Settlement Order and the Beach Point Settlement

Agreement; (b) are continuing to interfere with the Debtor's ability to administer its estate and

the property-level Subsidiaries by instructing Yardi not to take any direction or requests from the

-15-

CRO, preventing the Debtor or any its Subsidiaries from accessing accounting data through the

Yardi Software, terminating access to the Yardi Software, and holding the Debtor and its estate

hostage for a ransom payment to access accounting data of the Debtor and its Subsidiaries, which

is property of the Debtor's estate; and (c) making demands and attempts to have such accounting

data erased, deleted or destroyed, in direction violation of the automatic stay.

> **(i)    The Debtor Has A Reasonable Probability of Success on the Merits and Will Be Irreparably Injured By Denial of a Temporary Restraining Order**

43.    In the context of enjoining an action against a non-debtor, "[t]he elements

of probable success on the merits and irreparable harm . . . are essentially a matter of whether

[the Debtor] would be seriously adversely affected" if the proceeding against the non-debtor is

not enjoined. *American Film Techs., Inc.*, 175 B.R. at 849.  In this case, injunctive relief

pursuant to 11 U.S.C. § 105(a) is warranted because further interference with the Debtor's ability

to access its property-level Subsidiaries' accounting data from Yardi and from entering into a

new contract with Yardi has already harmed, and will continue to irreparably harm, the Debtor to

administer its estate and to maintain the subsidiary Properties.  It goes without saying that access

to accounting data and a functioning accounting system is a critical, if not the most important,

aspect of the ability to run a business in the ordinary course, particularly one as large and as

complex as the Debtor and its Subsidiaries.  As of December 2, 2015, access to the Yardi

Software was terminated, and the Debtor and its Subsidiaries are unable to access critical

accounting data.  Thus, the irreparable harm is already occurring.  The Debtor is merely seeking

to enforce the provisions of the Beach Point Settlement Order and Defendants' obligations under

the Beach Point Settlement Agreement to which they are a party.  The Defendants have "no decision-making authority in connection with the operations [and] management of the Debtor and the Subsidiaries . . . ."  Beach Point Settlement Agreement at § 2(a).

44.    Notwithstanding the terms of the Beach Point Settlement Order and the Beach Point Settlement Agreement, Defendants have conspired, to interfere with the Debtor's administration of its estate by, among other things; (a) instructing Yardi not to take any direction or requests from the CRO, preventing the Debtor from accessing its Subsidiaries' accounting data through the Yardi Software, terminating access to the Yardi Software, and holding the Debtor and its estate hostage for a ransom payment to access accounting data of the Debtor and its Subsidiaries, which is property of the Debtor's estate; and (b) making demands and attempts to have such accounting data erased, deleted or destroyed, in direction violation of the automatic stay.

45.    The Debtor is entitled to a preliminary injunction enforcing the terms of the Beach Point Settlement Order and the Beach Point Settlement Agreement against the Defendants.  Injunctive relief is therefore proper in this case because there is a likelihood of success on the merits of the Debtor's claims that Defendants, and certain persons acting on their behalf, either directly or indirectly, in the name of CEI: (a) are willfully violating the terms of the Beach Point Settlement Order and the Beach Point Settlement Agreement; (b) are continuing to interfere with the Debtor's ability to access accounting data for its Subsidiaries through the Yardi Software; and (c) are violating the automatic stay by attempting to have such accounting data deleted, destroyed, and erased.

-17-

46.     In addition, the accounting data is property of the Debtor's estate and the Defendants, in the name of CEI, cannot demand that property of the estate be destroyed or erased.  Indeed, "[p]roperty of the estate includes books and records produced during a corporation's existence."  *Keller v. Blinder (In re Blinder, Robinson & Co., Inc.)*, 140 B.R. 790, 794 (Bankr. D. Colo. 1992).  This is a blatant violation of the automatic stay.  *See* 11 U.S.C. § 362(a)(3) (the automatic stay protects against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate").  And it represents another attempt by the Defendants to interfere with the operations of the Debtor and its Subsidiaries, in violation of the Beach Point Settlement Order and the Beach Point Settlement Agreement.  *See* Beach Point Settlement Agreement at §§ 2(a), 12(d).

### (ii)     A Preliminary Injunction Will Not Harm Defendants

47.     The likelihood of irreparable harm to the Debtor and its bankruptcy estate in the absence of an injunction far outweighs any conceivable harm to the Defendants if they are allowed to continue their efforts to interfere with the ability of the Debtor to access the Subsidiaries' accounting data through the Yardi Software, and to have such data deleted and destroyed.  In fact, Defendants will suffer no legally cognizable harm if the requested injunctive relief is granted because this Court has already approved the Beach Point Settlement Order, by which the Defendants contractually agreed to remove themselves from any decision-making authority for the operations and management of the Debtor and its Subsidiaries and to "refrain from . . . taking any actions that would interfere with the effectuation of the agreements and understandings of the Parties."  *See* Beach Point Settlement Agreement at § 12(d).  Defendants'

-18-

ongoing interference with the Debtor's ability to access the Yardi Software and certain critical

accounting data is nothing more than an attempt to hold the Debtor and its estate hostage for

obtaining data that is property of the estate.  As part of the Beach Point Settlement Agreement,

Defendants agreed refrain from taking actions to interfere with the operations and management

of Debtor and its Subsidiaries, yet that is precisely what they are now doing by preventing access

to accounting data, trying to demand payment in exchange for such access, and demanding that

parties delete or destroy accounting data that is critical to operations of the Subsidiaries.  Finally,

the Defendants, and CEI, have no legally cognizable right to demand that property of the estate

be destroyed, in violation of the automatic stay.

### (iii)    Granting the Preliminary Injunction is in the Public Interest

48.    "In the context of a bankruptcy case, promoting a successful

reorganization is one of the most important public interests."  *In re Integrated Health Services,*

*Inc.*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) (citing *American Film Techs.*, 175 B.R. at 849).

In this case, as discussed above, injunctive relief is necessary and appropriate because

Defendants' further interference with the Debtor's ability to access accounting for the

Subsidiaries data (and have such data deleted or destroyed) has and will irreparably harm the

Debtor, the ongoing administration of its estate, and its reorganization efforts.  Granting the

requested preliminary injunctive relief therefore will be in the public interest as it will further the

Debtor's administration of the estate, honor and preserve the sanctity of this Court's prior orders,

and protect property of the estate.

-19-

**B.**     <u>**No Bond or Other Security Should Be Required in this Case**</u>

49.     Bankruptcy Rule 7065 expressly exempts the security requirement of Federal Rule of Civil Procedure 65.  *See* Fed. R. Bankr. P. 7065.  In particular, Bankruptcy Rule 7065 provides that no security is required for a debtor in possession, such as the Debtor, to obtain a temporary restraining order or preliminary injunction absent an order specifically requiring such security.  In the instant case, pursuant to Bankruptcy Rule 7065, the Debtor should not be required to post a bond or other security as a condition of the injunctive relief that it seeks.  Further, even absent Bankruptcy Rule 7065, a bond would be inappropriate here because the Debtor is merely seeking to enforce a prior order of this Court and Defendants' obligations under the Beach Point Settlement Agreement to which they are a party, and to enforce the automatic stay.

<u>Conclusion</u>

50.     For the foregoing reasons, the Debtor respectfully requests that the Court enter an order: (a) preliminary enjoining the Defendants, and any person or entity acting on their behalf, either directly or indirectly from further interference with the Debtor's ability to access all accounting data maintained through the Yardi Software for the Debtor and its Subsidiaries, or interfering with the ability of the Debtor, on behalf of itself or any of its Subsidiaries, to enter into a new contract with Yardi for the provision of accounting services; (b) providing that the Debtor is permitted to enter into a new contract with Yardi for the provision of accounting services for the Debtor and its Subsidiaries; (c) gives the Debtor, on behalf of itself and its Subsidiaries, immediately access to accounting data of the Debtor and its Subsidiaries

DOCS_DE:203567.3 89703/002

maintained through the Yardi Software; (d) requiring that neither the Debtor nor any of its

Subsidiaries be required to purchase, tender any amounts, negotiate a sale, or make arrangements

with the Defendants to obtain access through the Yardi Software of any accounting data (current

or historical) of the Debtor or any of its Subsidiaries or for use of any customization features

through the Yardi Software;  and (e) granting such other and further relief as this Court deems

just and proper.

Dated: December 3, 2015                    PACHULSKI STANG ZIEHL & JONES LLP


                                           */s/ Peter J. Keane*
                                           Richard M. Pachulski (CA Bar No. 90073)
                                           Alan J. Kornfeld (CA Bar No. 130063)
                                           Maxim B. Litvak (CA Bar No. 215852)
                                           Peter J. Keane (Bar No. 5503)
                                           919 North Market Street, 17th Floor
                                           P.O. Box 8705
                                           Wilmington, Delaware 19899-8705 (Courier 19801)
                                           Telephone:  (302) 652-4100
                                           Facsimile:  (302) 652-4400
                                           Email:  rpachulski@pszjlaw.com
                                                   akornfeld@pszjlaw.com
                                                   mlitvak@pszjlaw.com
                                                   pkeane@pszjlaw.com

                                           Counsel to Plaintiff
                                           Variant Holding Company, LLC